## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| |
|---|
| ROBERT A. SCHULTZ JR., *on behalf of himself and those similarly situated*, |
| Plaintiff, |
| -against- |
| CREDIT CONTROL, LLC, and JOHN DOES 1 to 10, |
| Defendants. |

**Civil Action No.: 2:18-cv-03474-CLW**

**<u>OPINION</u>**

**I.      <u>Introduction</u>**

This matter comes before the Court on defendant Credit Control, LLC's ("CC") motion seeking to strike plaintiff Robert A. Schultz, Jr.'s ("Plaintiff") class allegations, or in the alternative, to set a deadline for Plaintiff to move for preliminary settlement approval. ECF No. 26. Plaintiff has opposed the motion and CC has filed a reply. ECF No. 32, 35. The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated below, CC's motion is GRANTED IN PART and DENIED IN PART.[1]

**II.      <u>Background</u>**

Plaintiff filed this Fair Debt Credit Protection Act ("FDCPA") class action in March 2018. ECF No. 1. Broadly, he alleges that CC, a collection agency, violated the FDCPA "by threatening to add interest to New Jersey consumers when the creditor of the account ceased assessing interest." <u>Id.</u> at ¶¶ 1, 13. In November 2018, the undersigned held a settlement conference at which a settlement in principle was reached. The settlement was memorialized in a

---

[1] The parties have consented to the undersigned's jurisdiction to adjudicate this matter. ECF No. 16.

class action settlement agreement (the "CASA"), which was executed in August 2019. ECF No. 26-2, Exhibit A.

The source of CC's motion is an FDCPA provision which states that the amount recoverable in a class action against a debt collector is "not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector". 15 U.S.C. § 1692(k)(A)(2)(B). The parties do not dispute the rule applies here. To this end, the CASA states that "Defendant has represented that its net worth is approximately $3,200,000.00. Plaintiff has relied on Defendant's representation as to its net worth and considers same to be a material term in negotiating the terms of this Settlement Agreement." CASA at § 6. Cognizant of the one percent limit on recovery, the parties settled the matter for $29,000. Id. at § 8(a); ECF No. 32 at 11.

Most directly at issue is the accuracy of CC's net worth valuation. The parties explain[2] that because CC's financial statements are audited at the close of the calendar year, at the time the settlement was negotiated in November 2018, CC's most recent audited financial statements were nearly a year old. As a result, at the settlement conference, the parties relied on an unaudited balance sheet reflecting the company's valuation at the close of the third quarter of 2018. ECF No. 26-1 at 2; 32 at 4. Seeming to anticipate that a more formal valuation would be in order, the parties agreed in the CASA as follows:

> By no later than seven (7) days following the execution of this Settlement Agreement, Defendant shall also provide Class Counsel a copy of its most recent audited financial statements. The audited financial statements shall be certified or authenticated by a qualified representative of Defendant.
>
> If Class Counsel deems [this] certification to be unacceptable, incomplete or inaccurate, the Parties shall cooperate to resolve any

---

[2] Both parties present facts in their memoranda of law, rather than in sworn declarations. Since the facts do not appear to be in dispute, the Court accepts the parties' factual representations for purposes of this motion.

> such dispute.  If such good faith efforts are insufficient to resolve
> the dispute, Class Counsel may depose, telephonically, person(s)
> involved in the preparation of the information contained in the
> certification. Any deposition shall be completed within fourteen
> (14) days of the request to take the deposition. Any disputes
> regarding the confirmatory discovery provided for herein shall be
> submitted to the Court for immediate resolution. [3]

CASA §§ 16-17. CC represents (and Plaintiff does not dispute) that CC provided Plaintiff with copies of updated audited financial statements before the CASA was executed, and a certification from CC's Controller shortly thereafter. ECF No. 26-1 at 2, 9; 35 at 2.

After the CASA was signed, Plaintiff requested from CC additional information concerning distributions made to CC's shareholders between the filing of the action and the settlement conference. According to Plaintiff, "these distributions artificially lowered Defendant's net worth by half, allowing Defendant to represent a contrived valuation which falsely lowered its class liability under the FDCPA." ECF No. 32 at 4. Plaintiff contended then — and continues to contend — that due diligence requires that he explore the distributions' effect on CC's net value before asking the Court to approve the $29,000 settlement.

CC largely rejected Plaintiff's requests for information, stating that it had provided all information required under the CASA. CC did, however, produce a declaration from its CEO explaining the distributions at issue. ECF No. 26-1 at 2-4 and exhibits thereto. Plaintiff has not invoked the CASA's provision permitting him to depose the individuals who prepared or certified the audited financial statements. ECF No. 35 at 2.

The CASA states that "Class Counsel will file the applications for preliminary and final approval of the settlement"; however, it does not provide a timeframe for these applications.

---

[3] While these procedures are not explicitly presented as the exclusive means for Plaintiff to obtain additional information on CC's valuation, fact discovery has been closed since May 2019. ECF No. 8. In effect, therefore, absent a reopening of discovery, the CASA's procedures are Plaintiff's only means to gather such information.

CASA at ¶ 19. Plaintiff has refrained from doing so, citing the above issues as reason for the delay. Faced with this impasse, CC now asks the Court to (i) strike Plaintiff's class allegations on the ground that class counsel's claimed due diligence in fact demonstrates that Plaintiff is not adequately representing the interests of the class; or alternatively (ii) set a deadline by which Plaintiff must move for preliminary approval of the CASA.

## III.    <u>Motion to Strike Class Allegations</u>

Motions to strike class allegations are disfavored and "will usually be denied unless the allegations in the pleading have no possible relation to the controversy, and may cause prejudice to one of the parties." <u>Schultz v. Midland Credit Mgmt.</u>, 2019 U.S. Dist. LEXIS 79889, at *6 (D.N.J. May 13, 2019) (quoting <u>DeSantis v. N.J. Transit</u>, 103 F. Supp. 3d 583, 597 (D.N.J. 2015)). This is particularly so "where the arguments against the class claims would . . . be more appropriate at the motion for class certification stage." <u>Burford v. Del. Cty., Pa.</u>, 2019 U.S. Dist. LEXIS 220215, at *33 (E.D. Pa. Dec. 20, 2019) (citing cases). Thus, "a court should grant a motion to strike class allegations only if the inappropriateness of class treatment is evident from the face of the complaint and from incontrovertible facts." <u>McPeak v. S-L Distribution Co.</u>, 2014 U.S. Dist. LEXIS 123728, at *8-9 (D.N.J. Sep. 5, 2014) (citing cases).

CC's motion implicates Rule 23 and Rule 12(f), the latter of which allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter" upon a motion "by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading.'" <u>Merino v. Wells Fargo & Co.</u>, 2017 U.S. Dist. LEXIS 143628, at *9 (D.N.J. Sep. 6, 2017) (quoting Fed. R. Civ. P. 12(f)); Fed. R. Civ. P. 23(c)(1)(A) ("At an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a

class action."); id. at § (d)(1)(D) ("[T]he court may issue orders that . . . require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly"). Substantively, CC's argument grows from Rule 23(a)(4)'s requirement that "the representative parties will fairly and adequately protect the interests of the class." CC asserts that counsel's delay in seeking settlement approval demonstrates counsel is acting to further his own interests (i.e. running up fees) to the detriment of the class, which awaits settlement approval and payment. The argument fails for a variety of reasons.

First, CC's cited authority concerns conflicts between representative parties and absent class members; not between counsel and the class. ECF No. 26-1 at 5 (citing, e.g., Larson v. AT&T Mobility LLC, 687 F.3d 109, 131-32 (3d Cir. 2012) ("The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent.") (emphasis added). While a conflict between counsel and class members is a recognized concern, it does not warrant the relief CC seeks here. Instead, it is the province of a challenge to class certification (which CC has agreed to for purposes of settlement, see CASA at ¶ 4) or settlement approval (which is not before the Court), or a reduction in class counsel's fee award. See, e.g., In re Baby Prods. Antitrust Litig., 708 F.3d 163, 178 (3d Cir. 2013) ("Where a district court has reason to believe that counsel has not met its responsibility to seek an award that adequately prioritizes direct benefit to the class, . . . it [is] appropriate for the court to decrease the fee award.") (citing cases); Larson, 687 F.3d at 131-32 (addressing conflict between class counsel and class members within context of appeal of class certification and settlement approval). Striking class allegations simply is not the proper remedy to address CC's conflict allegations, nor does CC cite any authority that it is. More fundamentally, CC provides no case law supporting the notion—nor does the Court find—that the conduct described amounts to a

failure by counsel to protect the class's interests. Finally, the motion to strike is untimely under Rule 12(f). This portion of CC's motion therefore is denied.[4]

## IV.     **Motion to Set a Deadline for Settlement Approval**

The Court agrees with CC that Plaintiff should be compelled to move this case toward resolution. While Plaintiff's interest in conducting due diligence as to CC's net worth is reasonable enough, Plaintiff cannot avoid the fact that he signed—and therefore, absent vacatur, is bound by—a settlement agreement that expressly incorporates the material fact that CC's net worth is approximately $3.2 million. See, e.g., Bowles v. N.Y. Liberty, 2014 U.S. Dist. LEXIS 172741, at *4-5 (D.N.J. Dec. 15, 2014) ("Settlement agreements are binding on the parties and basic contract principles apply."); see also Ehrheart v. Verizon Wireless, 609 F.3d 590, 596 (3d Cir. 2010) ("[T]he fact that the settlement agreement is a class action settlement governed by Rule 23 does not affect the enforceability of the agreement as a binding contract.").

Because Plaintiff was in possession of CC's audited financial records when he signed the CASA, he was then fully equipped to conduct the due diligence he now claims is standing in the way of his moving for settlement approval. He similarly could have refrained from signing off on CC's valuation before verifying it. Additionally, for reasons unknown, Plaintiff has not deposed the individuals involved in preparing and certifying CC's financial statements.[5]

---

[4] Within the context of this argument, the parties discuss the propriety of CC's financial records serving as the basis for the company's net value. ECF No. 26-1 at 6-8; 32 at 6-7; 35 at 3-5. The Court will not explore this issue now. As stated in Sanders v. Jackson, 209 F.3d 998 (7th Cir. 2000), "the calculation of statutory damages should not result in a mini trial; the [FDCPA] seeks to avoid a separate contest over damages by using the term net worth to denote a company's book value net worth." Id. at 1003. Also, "[u]nder New Jersey law, we must interpret the parties' contract according to its plain language." Travelers Indem. Co. v. Dammann & Co., 594 F.3d 238, 255 (3d Cir. 2010) (citing cases). Because the parties have reached (some form of) agreement on an issue as to which the statute "seeks to avoid a separate contest", the Court will not delve into this question upon the present motion.

[5] As above, the CASA does not set a deadline for Plaintiff to do so.

Pragmatically, an issue arises because the CASA is less than clear when it comes to Plaintiff challenging CC's valuation. On the one hand, the parties expressly agreed to the $3.2 million valuation as a material term in the CASA. On the other, the CASA accommodates Plaintiff's right to challenge this figure. The result is somewhat gray: is CC's valuation $3.2 million, or is this an open question?

In view of the above, the Court finds the most direct and equitable route toward resolution to be as follows. Per the CASA, Plaintiff may notice the deposition of "person(s) involved in the preparation of the information contained in [CC's Controller's] certification" to inquire about the valuation matters at issue. Thereafter, Plaintiff shall either (i) move for preliminary approval of the CASA; or (ii) seek leave to vacate the CASA an reopen discovery. If Plaintiff does the latter, it is in this context that the Court will provide Plaintiff his requested "opportunity to have the Court address Defendant's true net worth". ECF No. 32 at 6. Doing so outside this arena would entail improperly upending the CASA.

Finally, the Court notes that "New Jersey courts generally refuse to vacate settlement agreements absent a demonstration of fraud, mutual mistake, or other compelling circumstances." Kaufman v. S. Winners, Inc., 2005 U.S. Dist. LEXIS 28699, at *6 (D.N.J. Nov. 18, 2005) (citing cases). As a result, if Plaintiff intends to vacate the CASA, the Court will expect him to establish that his reliance on CC's claimed valuation was the result of such extenuating circumstances warranting vacatur.

An Order consistent with this Opinion follows.

Dated: May 19, 2021

*/s/ Cathy L. Waldor*
Cathy L. Waldor, U.S.M.J.